## 18504

Willie James GRIER, Appellant, v. Cherosse CORNELIUS and Jack Cornelius, Jr., a minor over the age of Fourteen (14) Years, Respondents

(148 S. E. (2d) 338)

*Messrs. Lowell W. Ross* and *Rogers, McDonald & Ross,* of Columbia, *for Appellant,*

*Joseph L. Nettles, Esq.,* of Columbia, *for Appellee,*

May 11, 1966.

Moss, Chief Justice.

Willie James Grier, the appellant herein, instituted this action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of Cherosse Cornelius and Jack Cornelius, Jr., the respondents herein.

The appellant alleged in his complaint that on November 17, 1961, while he was riding as a passenger in a 1952 Chrysler automobile owned by Cherosse Cornelius, which was her family car, and driven by Jack Cornelius, Jr., her son, and her agent and servant, the said automobile left the road and collided with a tree near the intersection of Colonial Drive and Lorick Avenue in the City of Columbia. It was

further alleged that the said automobile was not equipped with adequate and proper brakes and there was a failure to inspect the same at proper intervals for the purpose of ascertaining its proper mechanical condition and to keep the brakes on said automobile in a proper state of repair, and to make regular and periodic inspection of the brakes and to have them inspected by persons competent to do so, all of which is charged to be in violation of the statutory laws of this State and the ordinances of the City of Columbia.

The answer of the respondents contained a general denial and, by way of further defense, alleged that on the date in question the collision occurred as a result of the sudden failure of the brakes on the automobile.

Immediately before the upset, Jack Cornelius, Jr., was driving the automobile in a northerly direction on Colonial Drive. As he approached the intersection of Colonial Drive and Lorick Avenue he applied the foot brake in an effort to slow the vehicle so that he could make a right angle turn from Colonial Drive onto Lorick Avenue, which was necessitated by a barricade in Colonial Drive at the bottom of a hill where there was a bridge under construction. The brake pedal went all the way to the floor with no effect on the speed of the vehicle. The driver then used the emergency or hand brake, but it also failed and did not slow the speed of the automobile. An effort was made by the driver, when the brakes failed, to use the reverse gear as a means of stopping the forward motion of said automobile. When all of these efforts failed, the driver being unable to turn into Lorick Avenue, drove the automobile on the western side of Colonial Drive in order to avoid going into the creek. It was then that the automobile collided with a tree.

Jack Cornelius, Jr., testified that the automobile had last been checked and repaired about thirty days prior to the day of the upset. On the day that the upset or collision occurred, he and the respondent had been working in St. Matthews and were returning from St. Matthews to Colum-

bia. Cornelius testified that when he reached West Columbia he began stopping at traffic lights and that the brakes of the automobile worked properly. He then crossed the Gervais Street bridge to other lights, at which he stopped without there being any difficulty with the brakes. Upon reaching Academy Way and Colonial Drive he again stopped at a traffic light. After the light changed he proceeded in a northerly direction on Colonial Drive, where the brakes failed for the first time, as is described above.

A witness, who had approximately twenty years experience in the automobile repair field and five years experience in making appraisals of physical damage to automobiles, testified that pursuant to a request he had inspected the 1952 Chrysler automobile to see if there was any brake failure or indication of brake failure. As a result of his inspection he found a badly leaking left rear wheel cylinder. He testified that in order to stop an automobile by means of hydraulic brakes pressure is applied on the brake pedal forcing fluid of the type which had leaked out into the wheel clyinder causing it to expand at either end, thereby moving the brake shoes which stop the wheels. When the fluid had leaked out of the cylinder it resulted in insufficient pressure to cause the wheels to stop. This witness also testified as follows:

"Q. Assume that an automobile had been driven on a particular day some hundred miles, in the course of which it had made a number of stops without any difficulty and with adequate brake pedal; assume further that on a particular occasion, at the crest of a hill, the brakes were applied and the pedal goes all the way to the floor; assume further that you found the condition in the brake which you found yourself. Now, add to what I have asked you to assume the condition which you know you found these brakes in. Do you have an opinion as to whether or not this was a sudden failure or one which occurred over a long period of time?

"A. Well, my opinion is that it was a sudden failure.

"Q. Would there have been any way for anybody to tell that this failure was going on by visual inspection, or would occur?

"A. Possibly a seepage in there would have indicated it, if you had disassembled the wheel.

"Q. If you had disassembled the whole wheel?

"A. If you had pulled the brake drum off, yes.

"Q. Do people usually do that hunting for leaks?

"A. Not unless they have some indication of trouble somewhere.

"Q. That's right. Unless they have some indication, they don't take the whole wheel to pieces?

"A. That's right."

\* \* \*

"Q. Mr. Brown, is the breaking down of wheel cylinders part of what we regard as normal periodic maintenance of an automobile?

"A. I wouldn't consider it so. Visual inspection for indication of leaks should be a periodic thing.

"Q. And if there is no indication of a leak, you don't tear down all of the wheels, do you? People don't do that periodically, do they?

"A. In my opinion, it would be best not to, unless there was some visual reason for it."

This same witness testified that when the massive leak occurred in the left rear wheel brake cylinder, it had the effect of rendering the entire hydraulic system inoperative. The kind of leak that he found is what he called a "blown cylinder" and could have occurred at any time. The witness said that "a new car can blow a wheel cylinder, or it can be ten years before it blows." The cylinder is inside the wheel assembly of the automobile. Inside the cylinder is a small seal or washer, the condition of which cannot be detected by ordinary visual inspection from the outside. According to this witness, entry into the cylinder where inspection can be made is a mechanic's job.

This case came on for trial at the 1964 October term of the Court of Common Pleas for Richland County, before The Honorable C. Bruce Littlejohn, Presiding Judge, and a jury. At the close of all the testimony, the appellant made a motion for a direction of verdict as to liability on the following grounds: (1) that the evidence was indisputable that the appellant was not within the "Guest Statute"; (2) that the only reasonable inference to be drawn from the evidence was the brakes on respondents' automobile were inadequate and defective in violation of Sections 46-561, 46-566, 46-568 and 46-569 and 46-511 of the Code, and Sections 20-115 and 20-116 of the ordinances of the City of Columbia and that the respondents were consequently guilty of negligence as a matter of law. The trial Judge granted the appellant's motion with respect to the "Guest Statute" but refused to grant his motion as to the respondents being negligent as a matter of law. The trial Judge refused appellant's request to charge the jury "that the burden is on the defendant to excuse himself from a violation of the statute." The jury returned a verdict in favor of the respondents. The appellant then made a motion for judgment *non obstante veredicto* on the issue of liability and a new trial on the question of damages or, in the alternative, for a new trial as to all issues. That motion was made upon the grounds (1) that the trial Judge erred in refusing to direct a verdict in favor of the appellant on the issue of liability and submitting to the jury only the question of damages because the only reasonable inference to be drawn from the evidence was that the respondents had violated the statutes above mentioned and consequently were negligent as a matter of law, and that the damages sustained by appellant were directly and proximately caused by defective brakes on respondents' automobile; (2) that the trial Judge erred in charging the jury on unavoidable accident and sudden emergency; (3) that the trial Judge erred in charging the jury that the respondents were required to inspect and repair the vehicle involved as would an ordinary reasonable person; and (4) that the trial Judge

erred in refusing to charge the jury "that the burden is on the defendant to excuse himself from a violation of the statute." The trial Judge refused to grant this motion and this appeal ensued.

There are two basic views with regard to the alleged violation of an applicable statute in cases predicated upon negligence. One view is that violation of a statute alleged to be applicable constitutes *prima facie* evidence of negligence. The view which has been adopted in South Carolina is that the violation of an applicable statute is negligence *per se,* and whether or not such breach contributed as a proximate cause to plaintiff's injury is ordinarily a question for the jury. *Grainger v. Nationwide Mutual Ins. Co.,* S. C., 147 S. E. (2d) 262. The statute allegedly violated in this case is what is commonly referred to as the brake statute. Our statute, which is similar to those of other jurisdictions which have adopted the Uniform Act Regulating Traffic is found in Sections 46-561, *et seq.* of the Code and provides that motor vehicles shall be equipped with brakes adequate to control the movement and to stop and hold such vehicles. It also provided that all brakes shall be maintained in good working order. The Code of the City of Columbia contains similar provisions. It is the contention of the appellant that the brake failure on the respondents' automobile was a violation of Sections 46-561, *et seq.*, and the relevant provisions of the Code of the City of Columbia. The appellant takes the position that in order to be relieved from a violation of the statutes and ordinances relating to brakes, the respondents were required to show by a preponderance of the evidence that it was impossible to comply with the statutes or that the brake failure was caused solely by latent defects.

While we have said the violation of an applicable statute is negligence *per se,* we have also said that such a statute must be given a reasonable construction. *Spencer v. Kirby,* 234 S. C. 59, 106 S. E. (2d) 883. We have never adopted such a strict position that would

make the owner or operator of a motor vehicle an insurer against any and all defects in the vehicle's equipment. We do not think that the Legislature intended the equipment statute to impose liability without fault or make the owner or operator of an automobile an absolute insurer of his brakes. In view of our decisions, a violation of the brake statute is negligence as a matter of law. However, the mere failure of brakes is not a violation of the brake statute as a matter of law.

In *Green v. Sparks*, 232 S. C. 414, 102 S. E. (2d) 435, we held that it was a question for the jury to determine whether or not the particular statutes involved in that case had been violated. Likewise, in *Spencer v. Kirby*, 234 S. C. 59, 106 S. E. (2d) 883, we held that it was for the jury to say whether the alleged violator of Section 46-424 of the Code had exercised such care as an ordinary, reasonable person would have exercised under the circumstances or entered upon the highway heedlessly and without regard for the safety of others. In *Stephens v. Southern Oil Company of North Carolina*, 259 N. C. 456, 131 S. E. (2d) 39, it was said:

"Plaintiff has shown the violation of a statute, G.S. § 20-124, mandatory in its language. Notwithstanding this mandatory language, the statute must be given a reasonable interpretation to promote its intended purpose. The Legislature did not intend to make operators of motor vehicles insurers of the adequacy of their brakes. The operator must act with care and diligence to see that his brakes meet the standard prescribed by statute; but if because of some latent defect, unknown to the operator and not reasonably discoverable upon proper inspection, he is not able to control the movement of his car, he is not negligent, and for that reason not liable for injuries directly resulting from such loss of control. The injuries result from an unavoidable accident. *Smith v. Pate*, 246 N. C. 63, 97 S. E. (2d) 457; *Pike v. Seymour*, 222 N. C. 42, 21 S. E. (2d) 884."

The North Carolina Court saw no inconsistency in holding that the violation of a brake statute, similar to ours, is negligence *per se,* and also holding that evidence could be produced by the offending party showing that a brake failure occurred wholly without his fault. We, likewise, see no inconsistency with our view that the violation of an applicable statute is negligence *per se* in holding that the mere failure of the brakes to properly function is not a violation *per se* of the brake statute. We think that it was a question of fact in this case, in the first instance, whether or not the statute had been violated. And, where the evidence is conflicting or susceptible of more than one inference, the issue of compliance with the brake statute is for the jury. *Seay v. Southern Railway-Carolina Division,* 205 S. C. 162, 31 S. E. (2d) 133.

The appellant raised the question of violation of the brake statute as amounting to negligence as a matter of law by motions for directed verdict and judgment *non obstante veredicto.* It is well settled that in passing upon motions for directed verdict and judgment *non obstante veredicto,* the evidence and all inferences reasonably deducible therefrom must be taken most strongly against the moving party and considered in the light most favorable to the nonmoving party. *Kelly v. City of Aiken,* 245 S. C. 503, 141 S. E. (2d) 651. This Court must adopt the view of the evidence most favorable to the verdict and give it the strongest probative force of which it will admit. *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522. The trial Judge, in refusing appellant's motions, held that the evidence upon the issues was susceptible of more than one inference and, hence, was properly for determination by the jury rather than the Court. We do not think that he was in error in so holding.

The respondents' automobile had been checked and repaired about thirty days prior to the collision. The respondent, Jack Cornelius, Jr., testified that when the automobile was checked and repaired at that

time there was nothing wrong with the car that had not been fixed. His further testimony that he had driven the car from St. Matthews through Columbia to the last traffic light prior to the point of the collision and that his brakes worked properly all of the way, which testimony is undisputed, coupled with the testimony of the witness who had considerable experience in automotive repair with regard to hydraulic brakes, was sufficient for the jury to conclude that the brakes had failed without any fault on the part of the respondents and in spite of their having done all that was reasonable and practical to guard against brake failure.

The appellant requested the trial court to charge the jury that "the burden is on the defendant to excuse himself from a violation of the statute." The appellant contends that when it appears that a defendant is involved in a collision because of a brake failure in violation of statutes and ordinances relating to brakes, the burden shifts to the defendant to prove by a preponderance of evidence that by his conduct in maintaining his brakes or because of the nature of the failure, his violation should be excused. The appellant complains that the failure of the trial Judge to charge their request, "* * * left the plaintiff in the position of having the burden of proving that the defendants were negligent in maintaining their brakes, and under the Court's charge the weight of the burden was more heavily upon the plaintiff. If the evidence were equally balanced on both sides, the effect of the whole charge was to require that the jury find for the defendants."

Confusion often arises with regard to the meaning and significance of the phrase "burden of proof." Professor Wigmore, in his treatise on evidence, finds two meanings for the phrase. The first meaning is the risk of nonpersuasion of the jury. The second meaning is the duty of producing evidence to the judge. The burden of proof in the first sense never shifts. However, the burden of proof in the second sense, that is the duty of producing evidence to satisfy the judge, does have the characteristic of shifting.

9. Wigmore on Evidence, Sections 2485, 2487, and 2489. The difference between the two uses of the phrase "burden of proof" is well illustrated in *Page v. Camp Mfg. Co.*, 180 N. C. 330, 104 S. E. 667, from which opinion we quote the following:

"The burden to prove his case is *always* on the plaintiff, whether the defendant introduces evidence or not. Where we have said, 'It is the duty of the defendant to go forward with his proof,' it was only meant in the sense that, if he expects to win, it is his duty to do so, or take the risk of an adverse verdict, and not that any burden of proof rested upon him. He pleads no affirmative defense but the general issue, and this puts the burden throughout the case on the plaintiff, who must recover, if at all, by establishing his case by the greater weight of evidence."

Since the trial Judge eliminated the affirmative defenses of assumption of risk and contributory negligence and did not charge the jury thereabout, the remaining defense of the respondents was nothing more than a general denial. The sole issue was whether or not the appellant was injured as a proximate result of negligent acts or omissions of the respondents. On that issue the appellant had the burden of proving such by the greater weight or the preponderance of the evidence, because the respondents had denied it. *Hoffman v. Greenville County*, 242 S. C. 34, 129 S. E. (2d) 757.

The appellant next assigns as error those portions of the charge whereby the trial Judge instructed the jury as to the law with regard to unavoidable accident and sudden emergency. The appellant contends that the unavoidable accident doctrine was inapplicable in the present case because the respondents were guilty of negligence as a matter of law. Since we have reached the conclusion that the question of whether the applicable statute had been violated was for the determination of the jury in this case, appellant's contention is not well taken. Where the evidence does not raise a genuine issue upon the question of unavoid-

able accident, it is error to instruct the jury in that respect. *Collins v. Thomas*, 244 S. C. 128, 135 S. E. (2d) 754. However, when such a question arises upon the evidence, an instruction as to unavoidable accident is proper. In the majority of the jurisdictions in this country, an instruction on unavoidable accident is proper in a motor vehicle accident case where there is evidence that the accident resulted from sudden mechanical failure of the defendant's automobile, and without negligence on his part. The instruction has been given in cases involving brake failure. 65 A. L. R. (2d) 102 through 105. In the present case, one of the principal issues was whether the brake failure occurred as the result of a violation of the statute on the part of the respondents or rather was simply a mechanical breakdown which they could not have detected, predicted or avoided. We do not think it was error for the trial Judge to instruct the jury on unavoidable accident.

If the jury found that the respondents had taken all reasonable and practical means of preventing deterioration and failure of the brakes on their automobile and that the failure of the brakes was sudden, they would then have to determine whether or not the respondents were negligent in proceeding after that discovery. The question of negligence on that point would have to be determined in the light of the situation in which the respondent, Jack Cornelius, Jr., found himself. The trial Judge charged the jury that violation of the brake statute would be negligence *per se*. The appellant contends that the charge of the sudden emergency doctrine is inconsistent therewith. It is perhaps true that if the brake statute had been violated prior to the sudden failure of the brakes, the sudden emergency doctrine would be inapplicable and a charge thereabout prejudicial. However, in this case, there was evidence from which the jury could have determined that prior to the sudden failure of the brakes, the statute had not been violated. If the jury so found, then, the respondent's conduct in driving the automobile with defective brakes should be judged

in the light of the situation in which he found himself. The evidence, with regard to his situation, was such as would justify a charge of sudden emergency. The trial Judge properly guarded against any misunderstanding on the part of the jury by prefacing his charge as to sudden emergency with instructions to the jury that a person who is suddenly and unexpectedly confronted with a perilous situation or emergency must not have brought the emergency about by his own negligence.

The last question argued by appellant rests upon the claim that the court erred in instructing the jury that respondents were only required to use ordinary care and diligence in inspecting their vehicle and keeping it in repair. What has already been said in passing upon the other issues raised shows that the instruction was a correct statement of the law.

Affirmed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and RHODES, Acting J., concur